UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CAT TRAIL CAPITAL, LLC, | : | |
|           Plaintiff | : | |
| | : | |
| v. | : | 3:08-CV-1128 (CFD) |
| | : | |
| PROMIA INCORPORATED, | : | |
|           Defendant. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Cat Trail Capital, LLC ("Cat Trail"), brought this action against the defendant, Promia Incorporated ("Promia") alleging breach of contract. Cat Trail claims that Promia has defaulted under the Credit Agreement, Amended and Restated Note, and Security Agreement executed between the parties. Cat Trail now moves for summary judgment. Promia opposes this motion, claiming that Cat Trail breached the contract first and that Promia's failure to pay the balance of the Amended and Restated Note is therefore excused. For the reasons that follow, Cat Trail's motion for summary judgment is granted.

**I.     Background[1]**

Cat Trail is a Connecticut limited liability company that invests in small- to middle-market companies. Promia is a California corporation that manufactures and sells computer network security products, including to the U.S. Defense Department. On October 30, 2007, Cat Trail entered into a Credit Agreement whereby it agreed to lend Promia up to an aggregate

---

[1] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated. This Court also has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a). Finally, pursuant to § 8.12 of the Credit Agreement, Connecticut law applies in this case.

amount of $1,112,500.00. This loan assisted Promia with a "Special Test Program" in which Promia would provide its products and services to prospective customers on a free trial basis. Under § 2.1(b) of the Credit Agreement, the loan could be disbursed in up to eight advances, the first being in the amount of $600,000 on the effective date of the Credit Agreement. Any time before January 15, 2008, Promia could request two subsequent advances, in any amount, up to a total of $400,000, provided the conditions precedent in § 3.2 of the Credit Agreement were satisfied. Moreover, any time before January 15, 2008, Promia could request up to five "Special Future Advances," up to an aggregate of $112,500, again, provided the conditions precedent in § 3.2 of the Credit Agreement were satisfied.[2]

---

[2] In relevant part, § 3.2 reads:

> The obligations of the Lender to make any Future Advance pursuant to a borrowing which increases the amount outstanding hereunder (including the initial borrowing) shall be subject to the further conditions precedent that on the date of such Advance:
>
> (a) the following statements must be true:
>
> (i) the representations and warranties made by Borrower herein and in each other Facility Document, are true and correct in all material respects on and as of the date of such Advance as though made on and as of such date; and
>
> (ii) no Default or Event of Default has occurred and is continuing, or would result from such Advance; and
>
> (iii) since the Closing Date, there has been no event or circumstance which has caused or is reasonably anticipated to cause a Material Adverse Effect; and
> . . .
>
> (c) with respect to any Special Future Advance, the Borrower shall have provided evidence of the use of the Advance for the costs of the Special Test Program, with supporting data and invoices reasonably acceptable to Lender, in amounts not to

Pursuant to the Credit Agreement, on October 30, 2007, Promia also executed a Convertible Promissory Note in the amount of $1,112,500.00 in favor of Cat Trail. That same day Promia executed a Security Agreement in favor of Cat Trail in which Promia granted Cat Trail a security interest in all of Promia's collateral, as defined by § 1.2 of the Security Agreement. Cat Trail duly perfected the security interest. On February 4, 2008, Promia executed an Amended and Restated Convertible Promissory Note ("Amended and Restated Note") in favor of Cat Trail in the amount of $1,362,500.00. The Amended Credit Agreement accompanying the Amended and Restated Note extended the period during which Promia could borrow from Cat Trail to February 8, 2008. Additionally, as provided for in Paragraph 2 of the Amended and Restated Note, Promia extended the maturity date of that Note to July 15, 2008, two months later than the original maturity date of May 15, 2008. Because of this extension, Cat Trail added 3% to the outstanding amount of the Amended and Restated Note.

Although Cat Trail loaned Promia a total of $1,274,000, at issue is Cat Trail's refusal to issue certain Special Future Advances. On November 13, 2007, Cat Trail advanced Promia a Special Future Advance of $24,000. On January 17, 2008, Promia presented Cat Trail with a status report on potential consumers and an update on its Special Test Program, including amounts Promia had spent on hardware, installation trips, and requests for evaluation models. Promia claims that it requested additional Special Future Advances totaling $88,500 in January

---

exceed the Special Test Program Billing Rates, and appropriate evaluation contracts with customers[.]

and February of 2008.³ Cat Trail did not provide Promia with the requested Special Future Advances. Subsequently, Promia failed to pay the balance of the Amended and Restated Note by the extended maturity date of July 15, 2008.

Cat Trail claims that Promia was not in compliance with § 3.2 of the Credit Agreement and was therefore not entitled to receive the Special Future Advances. Cat Trail further claims that Promia's failure to pay the balance of the Amended and Restated Note by July 15, 2008 means that Promia is in default and in breach of the Credit Agreement and Amended and Restated Note.⁴ Cat Trail also claims that Promia breached its obligations under the Security Agreement because Promia has failed to deliver its collateral to Cat Trail. Therefore, because Cat Trail believes that there are no material issues of disputed fact, Cat Trail moves for summary judgment seeking, among other things, damages, reasonable costs, and attorneys' fees. According to Cat Trail, as of November 6, 2009, excluding attorneys' fees and expenses, Promia owes Cat Trail $1,696,641, with interest accruing at the amount of 15% per annum.⁵

Promia opposes summary judgment and claims that at the time Cat Trail refused to provide the funds for the Special Future Advances, Promia was in compliance with all conditions

---

³ Cat Trail claims that these requests were made on or about February 3, 2008, February 15, 2008, and February 22, 2008, but neither party offers any documentary proof of the exact dates.

⁴ In a letter dated May 22, 2008, Cat Trail informed Promia that Promia was in default, asserting Promia breached the Credit Agreement in a variety of ways. In their motion for summary judgment, however, Cat Trail does not mention any of the alleged violations declared in the May 22, 2008 letter, instead focusing on Promia's failure to pay its debt by the extended maturity date of July 15, 2008.

⁵ Pursuant to Paragraph 6 of the Amended and Restated Note, upon any default, the interest rate under the Amended and Restated Note could be increased by 3% at the option of Cat Trail.

precedent in § 3.2. Promia claims that Cat Trail deliberately breached its agreement with Promia in an attempt to force Promia into bankruptcy so that Cat Trail could obtain Promia's clients. Promia further claims that because of Cat Trail's alleged breach, Promia could not provide its customers with the demonstration models it had promised and subsequently suffered lost sales and profits. Promia claims that because of these lost profits it could not fulfill its obligations to pay the Amended and Restated Note. Therefore, Promia claims that because Cat Trail breached the Credit Agreement first, Promia's non-performance should be excused.[6]

## II.   Discussion

### A.   Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[6] Promia also requests that, in lieu of granting summary judgment, the Court grant it additional time to complete discovery. Promia alleges that, among other things, discovery will uncover evidence of bad faith. Specifically, Promia states that it would obtain this evidence through the depositions of Chad Hellman, CFO of Cat Trail, and David Dekker, Managing Partner of Cat Trail, and through various document requests from Cat Trail. At the time of oral argument on this motion, nearly one year had passed since Promia made the request for additional time to complete discovery. Despite extensions of the discovery deadline, Promia had not taken any of the aforementioned depositions. Following oral argument, the Court gave the parties thirty days to supplement their motions with additional information, including depositions. Promia provided the Court with notices of depositions for Ian Berman and Joe Ramos, with the depositions scheduled for October 28, 2009. Promia, however, did not provide the Court with any supplemental information or deposition testimony. It is unclear whether these depositions ever went forward. Moreover, to this date, it does not appear that Hellman or Dekker have been deposed. Therefore, the Court declines to postpone decision on the motion for summary judgment.

any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); accord Miner v. Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When examining a motion for summary judgment the Court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. Patterson v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004). However, a party may not create a genuine issue of material fact by resting on the "mere allegations or denials" contained in its pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

B.     Breach of the Agreements

"The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." Rosato v. Mascardo, 844 A.2d 893, 902 (Conn. App. 2004) (internal quotations omitted). Whether a contract has been materially breached is a question of fact. Shah v. Cover-It, Inc., 859 A.2d 959, 962 (Conn. App. 2004). When a contract contains conditions precedent, the conditions precedent must be fulfilled in order for the right to enforce the contract to come into existence. Christophersen v. Blount, 582 A.2d 460, 462 (Conn. 1990) (citing Lach v. Cahill, 85 A.2d 481, 482 (1951)). Whether performance of a certain act is a condition precedent depends on the intent of the parties as expressed in the contract and read in light of the circumstances surrounding the

execution of the instrument.  Id. at 462–63 (citing Ravitch v. Stollman Poultry Farms, Inc., 328 A.2d 711 (1973)).  The proper interpretation of an unambiguous contract is a question of law for the court, which may be resolved on summary judgment.  S. New Eng. Tel. Co. v. Global Naps, Inc., 482 F. Supp. 2d 216, 223 (D.Conn. 2007).

      Here, there is no dispute that the various agreements executed between the two parties were valid contracts.  The dispute arises over which party breached the contract.  It is undisputed that Promia has not paid the remainder of its balance by the due date of July 15, 2008, and therefore would be considered in default.  Promia, however, claims that its default is excused by Cat Trail's initial breach in failing to provide Promia with the Special Future Advances Promia requested in January and February 2008.  Moreover, Promia claims that this "breach" was in bad faith and violated the implied covenant of good faith and fair dealing inherent in every contract.  In response, Cat Trail alleges that it did not breach the contract, rather Cat Trail claims that Promia failed to satisfy at least six conditions precedent to receiving the Special Future Advances.

      Cat Trail claims Promia violated § 3.2 because Promia's product costs exceeded the "Special Test Program Billing Rates" defined in § 1.1 of the Agreement.  Section 1.1 states that the "Special Test Program Billing Rates" consists of product costs not exceeding $3000 per unit and installation costs not exceeding $2250 per unit.  In an e-mail to Cat Trail's CFO and managing partner, Ian Berman—writing on behalf of Promia— admitted that the product costs exceeded what was stated in the Credit Agreement.[7]  Specifically, Berman stated that the Special Test Program actually costs $7500—$2250 more than the amount stipulated in the Credit

---

[7] It is unclear precisely what authority Berman had to speak on behalf of Promia, although he was included in various e-mail discussions with Cat Trail.  At oral argument it was deduced that Berman was a financial advisor hired by Promia.

Agreement. Promia's own exhibits also demonstrate that it exceeded the Special Test Program Billing Rates. For example, Promia's Special Test Program update of January 17, 2008 shows that the costs for each unit exceeded the Special Test Program Billing Rate by $2250. Because § 3.2(c) of the Credit Agreement states that the supporting data and invoices cannot exceed the Special Test Program Billing Rates, the undisputed facts demonstrate that Cat Trail could have validly denied Promia's requests for Special Future Advances on this ground.[8]

Promia also claims that Cat Trail acted in bad faith by not providing it with the Special Future Advances.[9] Every contract has an implied covenant of good faith and fair dealing. Devan Motors of Fairfield, Inc. v. Infiniti Div. of Nissan N. Am., Inc., 579 F. Supp. 2d 294, 313 (D.

---

[8] Berman's e-mail noted that the costs in the Credit Agreement were estimated before Promia had any experience with the Special Test Program. After some time, Promia found that extra money was required. This apparent miscalculation, however, does not change the fact that Promia was not in compliance with this provision of the Credit Agreement.

[9] Promia does not argue bad faith on this point specifically, but rather that Cat Trail exercised bad faith in general in failing to grant Promia's requests for Special Future Advances. Although bad faith is an issue of fact, Renaissance Mgmt. Co., Inc. v. Conn. Hous. Fin. Auth., 915 A.2d 290, 298 (Conn. 2007), Promia has not demonstrated a material issue of fact with regards to bad faith. In support of Promia's claim of bad faith, Promia submits the affidavit of the President and CEO of Promia, John Mullen. Most of the Mullen affidavit, however, is either based on speculation or hearsay. Federal Rule of Civil Procedure 56(e) requires summary judgment motions to be opposed by affidavits based on the personal knowledge of the affiant. Hearsay testimony that would not be admissible if the affiant testified to it at trial may not be set forth in an affidavit. Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (internal citations omitted). Therefore, the only support for Promia's bad faith claim is Mullen's assertion that Dekker and Hellman stated to Mullen himself that Cat Trail "was intentionally refusing to provide Promia with Special Future Advances." Because, however, the undisputed facts demonstrate that Cat Trail was lawfully not providing such advances, this statement does not demonstrate a sinister motive or design to mislead or deceive. See Habetz v. Condon, 618 A.2d 501, 504 (Conn. 1992). Additionally, Promia argues that a reasonable inference about Cat Trail's "modus operandi" can be drawn from Cat Trail's previous "take over" investment strategies mentioned on its website. However, Promia offers no evidence that these strategies are in place in this case or that the strategies demonstrate bad faith.

Conn. 2008). This implied covenant fulfills the "reasonable expectations of the contracting parties as they presumably intended," and cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless those terms are against public policy. Magnan v. Anaconda Indus., Inc., 479 A.2d 781, 786 (Conn. 1984). A party acts in bad faith if the party commits "actual or constructive fraud, or [has] a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Habetz v. Condon, 618 A.2d 501, 504 (Conn. 1992) (internal citation omitted). Here, the contract expresses the clear intent of the parties that Cat Trail's obligation to disburse Special Future Advances was premised on Promia not exceeding the Special Test Program Billing Rates; therefore, the implied covenant of good faith cannot be interpreted to alter the clear terms of the contract.

Thus, even taking the facts in the light most favorable to Promia, no reasonable jury could find that Promia satisfied this condition precedent to receiving the Special Future Advances. Therefore, Cat Trail did not breach the Credit Agreement by not disbursing Special Future Advance funds.[10] It is undisputed that Promia has not paid the loan by the extended maturity date; therefore, summary judgment in favor of Cat Trail is granted on the claim that Promia breached the terms of the Credit Agreement and the Amended and Restated Note.

Cat Trail also argues that Promia is in breach of the Security Agreement because Promia has failed to deliver its collateral to Cat Trail as required by § 7.1 of the Security Agreement. Promia does not dispute that it has not delivered such collateral, but rather states that because Cat

---

[10] Promia's failure to comply with the Special Test Program Billing Rates is sufficient evidence of non-compliance with the prerequisites of § 3.2(c); therefore, the Court does not address Cat Trail's other arguments regarding non-compliance.

Trail breached the contract first, Cat Trail's rights under the Security Agreement are "nonexistent." As stated above, Promia's argument regarding Cat Trail's breach fails as a matter of law. Because Promia is in default of the Credit Agreement and has not delivered the collateral as required by the Security Agreement, Promia is in breach of the Security Agreement. Therefore, summary judgment in favor of Cat Trail is granted on the claim that Promia breached the terms of the Security Agreement.

Pursuant to § 8.3, Promia must pay all reasonable costs, expenses, and reasonable attorneys' fees incurred with respect to any litigation or controversy arising from the Credit Agreement. A hearing shall be held, at a time to be scheduled by the Court, to determine the reasonable amounts of such costs, expenses and attorneys' fees. At such time the Court will also consider any issues regarding the foreclosure of Cat Trail's security interest as well as the sale of any collateral.

### III.     Conclusion

Accordingly, Cat Trail's motion for summary judgment [Dkt # 16] is GRANTED.

SO ORDERED this __17th__ day of February 2010, at Hartford, Connecticut.


 /s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY
UNITED STATES DISTRICT JUDGE**